### APPEAL OF THE LAW AND CREDIT CO.

Docket No. 508. Decided October 13, 1926.

**1.** Salaries paid to executives of the petitioner determined to have been reasonable.
**2.** Rate of depreciation on property used in printing and publishing determined.

*Henry S. Conrad, Esq.*, and *Phil D. Morelock, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the Commissioner.

This is an appeal from the determination of deficiencies in income and profits taxes of $2,400.59, $2,869.92, and $1,844.54, respectively,

for the years 1917, 1918 and 1919, arising from the disallowance by the Commissioner of certain deductions claimed by the petitioner on account of salaries paid, invested capital, and exhaustion, wear and tear, and obsolescence of property used in the business. The Commissioner admits error as to the invested capital for the three years.

### FINDINGS OF FACT.

1. In 1889, Ernest E. Smith and one other formed a partnership and embarked in the job-printing business in Kansas City, Mo. The firm owned one small job press, and commenced with a four-page weekly paper, containing legal notices of state and municipal court matters in Jackson County and Kansas City, Mo., and reports of matters pending in and decided by those courts.

2. In 1892 the partners incorporated under the laws of Missouri, with a capital stock of $12,000, consisting of 240 shares, each having a par value of $50. The corporation took over and continued the business of the partnership.

3. In 1895, Elbert E. Smith, a brother of Ernest E. Smith, purchased 105 shares of the capital stock, and, at all times since this purchase, Ernest E. Smith has owned 134 shares, Elbert E. Smith, 105 shares, and another brother, one share of the stock. The business of the corporation has steadily increased, keeping pace with the growth and development of the City of Kansas City and County of Jackson, and, in 1919, the company had an investment in capital assets of $100,000, more or less, a gross income of $61,370.27, and had forty or more employees on its payroll.

It publishes the " Daily Record," a newspaper in which is printed information with regard to court procedure, transfers of property and legal notices. This paper has been designated the official paper of Kansas City and of Jackson County, Mo., and by reason of such designation the taxpayer secured the publication of legal notices from said city and county.

The taxpayer also publishes a weekly paper, issues a credit guide, and does job printing, but its principal source of income is from printing legal notices.

4. At no time since its organization has the corporation paid a dividend.

5. During the three years of the partnership the salary of Ernest E. Smith averaged $362.95 per year. For 1892, the first year after incorporation, it was $398.03; for 1893, $725.23; for 1894, $990; and, for each of the next four years, $1,200—giving an average for the first ten years of $800.21. In 1905 it had increased to $7,000, and so

continued until the end of the second decade of his connection with the business, the average during this decade being $4,205. During the third decade his average salary was $14,121, and the highest salaries paid were $15,000 for 1911, $18,680 for 1912, $18,000 for 1915 and 1917, and $20,000 for 1916. The average salary for the next two years, 1919 and 1920, was $8,800, and the average for the 32 years was $6,524.16.

6. The annual salary received by Elbert E. Smith during the first four years of his connection with the corporation was $900. During the ten years ended with 1908 the average was $3,480, and the highest salary was $6,000. During the next ten years the average was $13,623.10; that for 1911 being $15,000; for 1912, $15,821; 1915, $18,000; 1916, $20,000, and 1917, $18,000. The salaries of the two were the same for 1910, 1911 and 1914–1920, inclusive.

7. From and after 1895 the whole management of the corporation, financially and otherwise, devolved upon these two men. They had no other business interests, and each devoted his entire time to the business of the corporation. They were both men of excellent business ability, with rare talent for securing and retaining the good will of other men. The salaries paid and here in controversy were fixed by the unanimous vote of the board of directors on April 3, 1907, March 15, 1918, and March 10, 1919, respectively. The directors agreed on such salaries as they thought the company could pay and still leave a little balance so that they " were going ahead on the plan based on their past experience."

8. The average useful life of the machinery and furniture used in the business was not in excess of ten years.

9. The Commissioner admits in his answer that he erred in computing the petitioner's profits tax for the year 1917, under the provisions of section 210 of the Revenue Act of 1917; admits that the said tax should be computed under the provisions of section 201 of said Act, and that, in computing the invested capital of the petitioner, there should be included the following assets:

| | |
|---|---|
| Land account | $32,202.91 |
| Von Pawel account | 19,383.14 |
| Good will | 13,912.94 |

All of these items were eliminated by him in computing invested capital for the said year. He also admits that the deficiency in tax for the years 1918 and 1919 should be recomputed to give effect to the adjustments which will necessarily result from such redetermination of the profits tax for 1917.

57694°—27——8

OPINION.

LANSDON: The only questions remaining for the Board to determine are as to the salaries allowable under the law to Ernest E. and Elbert E. Smith for the years 1917, 1918 and 1919, and what percentage should be allowed for exhaustion, wear and tear, and obsolescence of taxpayer's properties. The law governing the allowance for salaries is:

For 1917,—section 12, Act of September 8, 1916:

* * * Such net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources—

First. All the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties, * * *.

For 1918 and 1919,—Revenue Act of 1918:

Sec. 234. (a) That in computing the net income of a corporation * * * there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, * * *

The salaries paid for 1917 were $18,000 each; for 1918, $14,000 each; and for 1919, $12,000 each. The Commissioner allowed for each of the three years a total payment of $20,000 for the salaries of the two men.

It is somewhat difficult to determine a reasonable allowance for salary. In the instant case there is now no dispute as to the earnings for the several years involved, the necessary expenses other than these two salaries, or the invested capital, except as that is affected by the salary allowances for the years 1917 and 1918. The Commissioner states in paragraph 3 of his answer that " the net income for 1917, 1918 and 1919, after deduction of the salaries claimed, represents a return on the invested capital of 7.97 per cent, 8.59 per cent, and 10.31 per cent, respectively." All circumstances considered, we are of the opinion that this is a fair return on the investment and that the salaries paid were reasonable.

We have found as a fact that the average useful life of the machinery, furniture, etc., of the corporation was not in excess of ten years. The taxpayer's prayer that it be allowed a deduction of 10 per cent for exhaustion, wear and tear, and obsolescence is, therefore, sustained.

The Commissioner having admitted that the petitioner is right in all other matters involved in the appeal, judgment is directed accordingly.

*Judgment will be entered on 15 days' notice, under Rule 50.*